UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| JOSEPH WEBB STEWART, | ) | |
|---|---|---|
| Plaintiff, | ) | Civil No. 09-389-ART |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| FRANK W. STEWART, | ) | **& ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Even in 1795, it was "settled long ago" that a plaintiff "should not run away with the fruits of the cause without satisfying the legal demands of his attorney, by whose industry, and in many instances at whose expense, those fruits are obtained." *Reed v. Dupper*, (1795) 101 Eng. Rep. 595 (K.B.) 596; 6 Term Rep. 361, 362. Two hundred years later, this principle still holds true, but with a twist: under Kentucky law, when a defendant settles with a plaintiff without informing the plaintiff's attorney, that defendant is on the hook for the fees of the plaintiff's attorney. Here, because Defendant Frank Stewart settled directly with his son Joseph Webb Stewart, Joseph's attorneys may enforce a lien for their fees against Frank.

## BACKGROUND

The parties agree on the essential facts of this dispute. Attorneys Joe Travis, Julie Gillum, and John Gillum represented the plaintiff, Joseph Webb Stewart, in a lawsuit against his father, Frank W. Stewart, for failure to properly administer a trust created for Joseph by his grandmother. Joseph was still a minor at that time, so his mother, Mary Jo Webb, acted

as his next friend and secured Travis's services. Mary Jo signed a contract agreeing to pay Travis a contingency fee of "1/3 of any recovery over and above the offer of $247,000" that Frank Stewart made at the outset of litigation. R. 105-2. Travis subsequently associated with two other attorneys, Julie and John Gillum. Shortly after the start of litigation, Frank Stewart provided an accounting of the trust, which revealed that he had used part of its funds to buy a lake house for himself in Tennessee. After this disclosure, the Knox District Court ordered Frank Stewart to deposit $287,398.99 with the court clerk as a reimbursement to the trust for the house.

On April 29, 2011, the parties participated in mediation. At that mediation, Joseph Stewart authorized his attorneys to settle the case for an additional $400,000, but the parties did not reach a settlement agreement. Four days later, however, Frank Stewart sent a $200,000 wire transfer to Joseph's bank account, and two weeks after that, Frank paid another $200,000 to Joseph by check. Ordinarily, this would be the happy settlement of a lawsuit. But Joseph Stewart neglected to tell a few key individuals—his lawyers—about the money he received.

Two months later, Scott Webster, who represented Frank Stewart, sent Travis and the Gillums a proposed settlement agreement calling for the dismissal of the lawsuit "in exchange for my client's payment of $400,000.00, some of which was for your client's new home; and he (my client) has made those payments in the form of $200,000.00 wire transfer and a $200,000.00 check." R. 103-3 at 2. This was news to Travis and the Gillums. They immediately attempted to contact their client, but to no avail. *See* R. 105 at 3. The three lawyers now seek to enforce an attorney lien against Frank Stewart for their contingency fee

2

plus expenses they incurred after the case settled.[1]  *See* R. 105.  Because state law controls the award of attorney's fees when a federal court sits in diversity jurisdiction, *see Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975), this Court will apply Kentucky law to decide the motion by Travis and the Gillums.  The parties also agree that Kentucky law should apply.  *See* R. 105 at 4; R. 106 at 1.

## DISCUSSION

In Kentucky, when a plaintiff recovers money damages, his attorney has "a lien upon the judgment recovered, legal costs excepted, for his fee," in the "amount of any fee agreed upon by the parties, or, in the absence of such agreement, for a reasonable fee." Ky. Rev. Stat. § 376.460.  The defendant "shall be deemed to have notice" of that lien if court records "show the name of the attorney." *Id*.  Frank Stewart raises three reasons for why Travis and the Gillums should not be able to enforce an attorney's lien against him: (1) there was not a valid contract between Joseph Stewart and his attorneys; (2) the contingency fee agreement in the contract was not reasonable; and (3) Travis and the Gillums must first attempt to collect money from their client before they can enforce an attorney's lien against the opposing party.  R. 106.  But Kentucky law supports none of these arguments.  Consequently, Travis and the Gillums are entitled to enforce an attorney's lien against Frank Stewart.

---

[1] Travis and Gillum filed a motion in the original action to enforce an attorney's lien, but asked permission to intervene if the Court believed it could not grant their request by motion. R. 105 at 6-7. Kentucky law permits an attorney to enforce a lien by motion in the original action, *see LaBach v. Hampton*, 585 S.W.2d 434, 435-36 (Ky. Ct. App. 1979), *overruled on other grounds by Baker v. Shapero*, 203 S.W.3d 697 (Ky. 2006), and the defendant agrees that intervention is not necessary. *See* R. 106 at 1. The Court will therefore decide Travis and Gillum's motion to enforce an attorney's lien as part of the underlying proceeding.

## I. The Contract Between Joseph Stewart and his Attorneys

Joseph Stewart was not yet an adult when this litigation began, so his mother, Mary Jo Webb, acted as his next friend and filed suit on his behalf. Kentucky law gives a "next friend" the full power to sue and enter contracts on behalf of the minor that she represents. *See* Ky. R. Civ. P. 17.03; *Cozine v. Bonnick*, 245 S.W.2d 935, 937 (Ky. 1952) ("The next friend, therefore, truly is a mere agent of the plaintiff . . . ."). Thus, when Mary Jo Webb filed suit—and when she signed a contract to retain legal assistance—she did so as an agent of her son. Her actions did not lose their legal effect when Joseph reached the age of majority during the course of litigation. Rather, Kentucky courts have recognized that no amended pleading is necessary when a minor comes of age because "the infant [is] the plaintiff from the inception of the suit." *Clements v. Ramsey*, 4 S.W. 311, 312 (Ky. 1887). The same is true for contracts: legal agreements signed by a next friend do not automatically become void when the minor becomes an adult. *See, e.g.*, *Branham v. Stewart*, 307 S.W.3d 94, 103 & n.39 (Ky. 2010) (noting that when a next friend hires an attorney to represent a minor, an attorney-client relationship continues to exist between the attorney and the minor until "proof of cessation of representation" has been established).

Frank Stewart also claims that Mary Jo Webb was never capable of serving as a next friend to Joseph because she and her son lived in Florida. It is true that a next friend must reside in Kentucky. *See* Ky. Rev. Stat. § 387.300. But even if Webb was not eligible to serve as a next friend, as Joseph's mother, she was his legal guardian while he remained a minor. *See* Ky. Rev. Stat. § 405.020; R. 1-20 at 2 (1998 Bell Circuit Court order granting Mary Jo Webb "the exclusive care, custody and control of Joseph Webb Stewart").

4

Kentucky law gives a "foreign guardian" of a "ward who is not a resident of the Commonwealth of Kentucky," the power to "sue for, collect, receive, and remove from the Commonwealth the ward's personal property located in the Commonwealth." Ky. Rev. Stat. § 387.185; *see also Branham*, 307 S.W.3d at 95 n.4 (allowing a mother to sue on behalf of her minor son when neither were Kentucky residents).

Mary Jo Webb could also hire an attorney on her son's behalf. Under Kentucky law, both a next friend and a guardian act as agents of a minor plaintiff, and both therefore have the power to create an attorney-client relationship on that minor's behalf. *See id*. at 101. The authority of a next friend or guardian to establish an attorney-client relationship must necessarily include the power to hire an attorney in the first place. Arguably, the Kentucky Supreme Court did not make this rule clear until its March 2010 *Branham* decision, but *Branham* also explicitly applied this holding retroactively "under longstanding precedent regarding next friends and guardians as minors' agents." *Id.* at 102. It does not matter whether Mary Jo Webb acted as her son's next friend or guardian because, in either scenario, she had the authority to enter into a contract for legal services on her son's behalf.

Joseph Stewart also did not attempt to revise or revoke that contract after he became an adult. To the contrary, Travis and the Gillums continued acting as Joseph Stewart's attorneys from the time he turned eighteen in July 2010 through the settlement of the lawsuit. Joseph Stewart had a valid fee agreement with Travis and the Gillums, which his attorneys can now enforce through an attorney's lien.

5

**II.     The Reasonableness of Plaintiff's Attorneys' Fees**

Frank Stewart also claims that Travis and the Gillums are seeking unreasonably high fees. Joseph Stewart, through his mother, agreed with his attorneys that they would receive one-third of all compensation greater than $247,000, and Kentucky law gives his attorneys a lien to collect that amount. *See* Ky. Rev. Stat. § 376.460 (Each attorney shall have a lien . . . for the amount of any fee agreed upon by the parties"). As a result, this Court has no authority to evaluate whether fees the parties agreed on are reasonable. Even if the Court had such power, a contingency fee for one-third of recovery is not per se unreasonable. *See, e.g.*, *King v. Grecco*, 111 S.W.3d 877, 883 (Ky. Ct. App. 2002) (upholding a trial court's award of a one-third contingency fee as reasonable). Travis and the Gillums are entitled to an attorney's lien for $131,684.66—the amount they are owed as a contingency fee ($146,666.66) less a credit of $14,982.00 they have already received from funds distributed by the Knox District Court. *See* R. 107 at 13 n.4.

Travis and the Gillums also seek $5,913.17 in fees for expenses they incurred between May 2011 and July 2011, when they did not know their client had settled the case, R. 105-1 at 8, and $12,258.30 for expenses incurred seeking to enforce their attorney's lien since then. Gillum Aff., R. 107-2. These expenses were not covered by the initial contract, so under Kentucky Revised Statute § 376.460, the Court must determine whether they are reasonable. On the basis of the record before it, however, the Court cannot evaluate these fees. If Travis and the Gillums wish to enforce an attorney's lien for these additional fees, they must provide a detailed itemization to the Court. This itemization may be filed *ex parte* if it contains information protected by the attorney work-product rule or attorney-client

privilege. If the lawyers choose to file it *ex parte*, they must also file a redacted version in the record only excluding notations covered by the attorney-client privilege.

### III. Whether Plaintiff's Attorneys Must First Attempt to Collect from Their Client

Travis and the Gillums are entitled to their lien, but the parties also disagree on against whom they can enforce it. Kentucky law is clear that a "defendant who settles with the plaintiff, without his attorney's knowledge, does so at his own risk as to the attorney's lien." *Jellico Coal Mining Co. v. Pope*, 166 S.W.2d 287, 289 (Ky. 1942). Frank Stewart does not claim otherwise. Rather, he argues that he bears the "risk" of paying the attorney's lien "only to the extent that [Travis and the Gillums are] not able to recover from available funds and/or the recovering plaintiff." R. 106 at 3. In support of this proposition, Stewart cites just one case, *McCormack v. Louisville & N.R. Co.*, 161 S.W. 518 (Ky. Ct. App. 1913).[2] But *McCormack* does not speak to whether an attorney must exhaust the possibility of receiving payment from his client before he can seek compensation from the opposing party. Instead, it held that when a defendant settles a personal injury case directly with the plaintiff, the defendant must pay the contingency fee of the plaintiff's attorney based on the amount of the settlement—a rule that is helpful to the plaintiff's attorneys, not Frank Stewart.

Moreover, in another early twentieth-century case, the Kentucky Court of Appeals held exactly the opposite of what Stewart claims. In *Proctor Coal Co. v. Tye & Denham*, 96 S.W. 512 (1906), the defendant argued that the plaintiff's attorneys needed to seek payment from their client before they could enforce an attorney's lien against the defendant. *Id.* at 514. But, the Court pointed out, it was "not necessary to do this" because the statute gave

---

[2] In his response, Stewart cited *Proctor v. Louisville & N.R. Co.* at 161 S.W. 518. No such case exists, but the Court will assume he intended to cite to *McCormack* at 161 S.W. 518. *See* R. 106 at 3.

7

the plaintiff's attorneys "a right to prosecute against [the defendant] without having made any settlement" with the plaintiff. *Id.* Kentucky law gives Travis and the Gillums a lien for their attorney's fees, and they may enforce that lien against Frank Stewart.

## CONCLUSION

Accordingly, it is **ORDERED** that the motion by the plaintiff's attorneys to enforce an attorney's lien against the defendant, R. 105, is **GRANTED IN PART AND DENIED IN PART**. The motion to intervene as a party to enforce the attorney's lien is **DENIED AS MOOT**. The motion is **GRANTED** for an attorney's lien of $131,684.66, the amount owed under the contingency fee arrangement. The motion is **DENIED WITHOUT PREJUDICE** for an attorney's lien of $5,913.17 and $12,258.30, the amounts in fees and expenses allegedly incurred since the parties settled. If the plaintiff's attorneys wish to seek a lien for these additional amounts, they shall have until **December 6, 2011**, to submit a detailed accounting of all other fees and expenses so the Court can evaluate their reasonableness. This accounting may be submitted *ex parte* if it contains privileged information.

This the 23rd day of November, 2011.

Signed By:
*Amul R. Thapar* AT
United States District Judge